Cathy **TYLER**, Plaintiff, Appellant,

v.

John **FITZSIMMONS**, et al., Defendants, Appellees.

No. 92–1559.

United States Court of Appeals, First Circuit.

Heard Oct. 7, 1992.

Decided April 7, 1993.

Robert Edmond Mittel with whom Mittel, Asen, Eggert & Hunter was on brief for plaintiff, appellant.

William G. Cole, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., William Kanter, Atty., Dept. of Justice, and Richard S. Cohen, U.S. Atty., were on brief for defendants, appellees.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and FUSTÉ,* District Judge.

CYR, Circuit Judge.

Appellant Cathy Tyler challenges a district court order dismissing her application for an award of attorney fees pursuant to the Equal Access to Justice Act ("EAJA") for lack of jurisdiction. We vacate and remand for further proceedings on the merits of the fee application.

* Of the District of Puerto Rico, sitting by designa-

## I

## BACKGROUND

The United States Department of Labor ("USDOL") administers a program under the Trade Act of 1974 (the "Trade Act"), 19 U.S.C. §§ 2101–2495, 2291 (1993), which authorizes "trade readjustment allowance" ("TRA") benefits to eligible workers whose employment is discontinued by companies certified by the Secretary of Labor as having been adversely affected by foreign import competition. *Id.* § 2291. In May 1985, USDOL certified plaintiff Tyler's employer, Bass Shoe Company, in connection with its layoffs after January 1984. In November 1984 and again in February 1985, Tyler was laid off temporarily; her employment was terminated in July 1985.

The Maine Department of Labor and Bureau of Employment Security ("MDOL") determines whether individual Maine workers are entitled to TRA benefits. In 1981, USDOL directed MDOL to utilize a worker's "first separation" date in calculating her fifty-two week eligibility period for basic TRA benefits. Although MDOL believed that the Trade Act and USDOL's regulations required use of a worker's "last separation" date, it did as directed. Under USDOL's "first separation" date formula, MDOL determined that Tyler's eligibility period for basic TRA benefits would run from December 1984 to December 1985. However, Tyler was not eligible for TRA benefits during this period because the Trade Act precludes TRA payments until a worker has exhausted her state unemployment insurance benefits. *See* 19 U.S.C. § 2291(a)(3)(A)–(B). Tyler, who remained eligible for unemployment insurance compensation throughout the December 1984–December 1985 period, took no administrative appeal from the MDOL decision.

In August 1986, MDOL brought the present action for declaratory relief against USDOL, challenging its "first separation" date directive. Tyler and another claimant

tion.

were permitted to intervene in the MDOL action as plaintiffs. On November 6, 1990, the district court granted declaratory relief for plaintiffs against USDOL and MDOL.[1] *Tyler v. United States Dep't of Labor*, 752 F.Supp. 32, 45 (D.Me.1990) (emphasis added).

Tyler had also asserted an entitlement to attorney fees under the EAJA, which permits a "prevailing party" to recover attorney fees in "any civil action" challenging a federal agency decision, 28 U.S.C. § 2412(d)(1)(A), but requires that "[the prevailing] party .., within thirty days of *final judgment in the action*, submit to the court an application for fees...." *Id.* § 2412(d)(1)(B) (emphasis added). On December 13, 1990, Tyler filed a motion to extend the forty-five day filing period under Local Rule 32 of the United States District Court for the District of Maine until "thirty days after final resolution of the plaintiffs' claims for Trade Act benefits from the [MDOL]."[2] The district court summarily granted the extension. On January 7, 1991, USDOL appealed and Tyler cross-appealed from the November 6, 1990 order. The appeal and cross-appeal were dismissed by agreement of the parties on February 6, 1991.

As contemplated by the district court remand order, Tyler resorted to the state administrative process for a redetermination of her entitlement to TRA benefits. In the meantime, on June 10, 1991, the United States Supreme Court rendered its decision in *Melkonyan v. Sullivan*, — U.S. —, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), which generally interpreted the EAJA filing deadline to run from the entry of a "final" judgment by a *court of law*, not from the final decision of an administrative agency following remand. *Id.* — U.S. at —, 111 S.Ct. at 2162.

Tyler settled her administrative claim with MDOL in December 1991, and promptly filed her EAJA attorney fee application with the district court. The district court denied the application as untimely, *Tyler v. Fitzsimmons*, 785 F.Supp. 10, 12 (D.Me. 1992), holding that *Melkonyan* required retroactive application of its jurisdictional rule to pending cases, and, therefore, that the thirty-day EAJA fee-application filing period had commenced to run on February 6, 1991, when we dismissed the appeal and cross-appeal from the district court's November 6, 1990 judgment, thereby rendering the district court judgment "final" and "unappealable." *Id.; see also* 28 U.S.C. § 2412(d)(2)(G) (EAJA term "final judgment" means "a judgment that is final *and not appealable*") (emphasis added). As the EAJA fee-application filing deadline is jurisdictional, and not subject to enlargement even for "good cause shown," the district court rejected Tyler's contention that her fee application was saved by the district court's earlier extension of the "procedural" deadline imposed by Local Rule 32. *Tyler*, 785 F.Supp. at 12.

## II

### DISCUSSION

In *Melkonyan*, the Supreme Court considered the EAJA filing provision in the specialized context of Social Security disability benefit determinations. In reviewing decisions of the Secretary of Health and Human Services ("Secretary") denying

---

1. The district court declared that: (1) "the [USDOL's] policy for the years 1981 through 1986, requiring use of an applicant's first separation from employment for purposes of determining eligibility for TRA benefits, was invalid," (2) "[t]he [MDOL is] hereby ordered, *consistent with state law*, to redetermine Plaintiff Tyler's ... entitlement to Basic TRA and Additional TRA weekly benefits, based on [her] last separation from employment prior to application," and (3) "*[i]f TRA benefits are granted to Plaintiff[] as a result of such redetermination*, the [USDOL is] hereby ordered to provide federal monies for the payment of the benefits."

2. As grounds for the motion, Tyler asserted (1) "[t]he plaintiffs have not yet finally prevailed in their claims for benefits," (2) "Local Rule 32 allows for such an extension for good cause shown on motion filed within 45 days after entry of judgment," (3) the "pending State administrative proceeding [in] which [plaintiff] is seeking redetermination of her benefits," may necessitate "considerable additional attorney time," and (4) any petition for attorney fees would be "premature," and would "necessitate multiple petitions and multiple hearings."

disability benefits, the district court has *only two* options when remanding to the Secretary for further administrative proceedings. *Melkonyan,* —— U.S. at ——, 111 S.Ct. at 2164 (citing 42 U.S.C. § 405(g)). A so-called "sentence four" remand order entered by the district court constitutes a "final judgment affirming, modifying, or reversing the administrative decision," usually on substantive grounds. *Id.,* —— U.S. at ——, 111 S.Ct. at 2165. *Melkonyan* contains language suggesting that a "sentence four" remand order *invariably* results in a final judgment, for purposes of determining the EAJA fee-application deadline, upon the expiration of the period for appealing the remand order affirming, modifying, or reversing the agency decision. *Id.*

On the other hand, generally speaking a so-called "sentence six" remand does not follow a district court ruling on the merits of an agency decision. Rather, upon the requisite "good cause" showing, *see* 42 U.S.C. § 405(g) (remand for further fact-finding only permissible if new evidence is "material" and "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"), the district court merely remands to the agency for further administrative proceedings ·in light of new evidence. *Melkonyan,* —— U.S. at ——, 111 S.Ct. at 2164. Thus, in "sentence six" remands, the district court would contemplate a *retention of jurisdiction* pending completion of the remand proceedings, and there would be no "final judgment" for EAJA purposes "until after the postremand proceedings are completed, the Secretary returns to court, the court enters a final judgment, and the appeal period runs." *Id.* —— U.S. at ——, 111 S.Ct. at 2165.

Appellees conceded at oral argument that *Melkonyan* is applicable in the present case, if at all, only by analogy. *Melkonyan* was a Social Security case, not a Trade Act case. Thus, the district court's November 6, 1990 declaratory judgment is roughly comparable, under appellees' proposed analogy, to a "sentence four" remand, in that the district court "reversed" the MDOL's denial of TRA benefits on the

only substantive ground advanced by Tyler—namely, the invalidity of USDOL's "first separation" directive. Accordingly, appellees contend that the EAJA filing deadline was March 11, 1991, thirty days after we dismissed the appeals from the November 1990 judgment on February 6, 1991. As it rests on a premise precluded by our case law, we reject appellees' syllogism.

This is not the first time a claimant has complained to us that the retroactive fallout from *Melkonyan* has unfairly impaired her recovery of an EAJA ·fee award. *See Labrie v. Secretary of Health & Human Servs.,* 976 F.2d 779 (1st Cir.1992) (per curiam). In a case decided after the district court dismissed Tyler's fee application, we rejected the contention that *all* post-*Melkonyan* "sentence four" remands invariably are to be considered "final judgments" for purposes of the commencement of the EAJA filing period. *Labrie,* 976 F.2d at 786. Although the Supreme Court scrutinized the district court order in *Melkonyan* to determine whether it was either a "sentence six" remand or a voluntary dismissal under Fed.R.Civ.P. 41(a), there was never any question but what the district court order in *Melkonyan* was *not* a "sentence four" remand. Thus, *Melkonyan*'s references to EAJA deadlines in "sentence four" cases were dicta which did not displace the Court's earlier statements in *Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). *See Melkonyan,* —— U.S. at ——, 111 S.Ct. at 2162. The Court in *Hudson,* indisputably a "sentence four" remand case, held that an EAJA application could encompass attorney fees attributable to postremand proceedings provided the remand order did not "dictate" that the plaintiff was to receive benefits, since " 'the claimant will not normally attain "prevailing party" status ... until after the result of the administrative proceedings is known.' " *Labrie,* 976 F.2d at 781 (quoting *Hudson,* 490 U.S. at 886, 109 S.Ct. at 2255). We emphasized in *Labrie* that our reconciliation of the *Melkonyan* and *Hudson* decisions conformed with the legitimate expectations of the par-

ties in cases pending at the time *Melkonyan* was decided, and with the prevailing practice in this and other circuits. *Id.* at 780 n. 2 (citing *Guglietti v. Secretary of Health & Human Servs.*, 900 F.2d 397, 400 (1st Cir.1990)).

Thus, if *Melkonyan* does apply by analogy to the present case, as appellees urge, under our jurisprudence the "sentence four" remand standard set out in *Labrie*, and adopted by the Eighth, Ninth, and Tenth Circuits, must also apply:

> When a judicial remand order in Social Security disability cases contemplates additional administrative proceedings that will determine the merits of the claimant's application for benefits, and thus will determine whether the claimant is a prevailing party, the district court *retains discretion* to enter a final judgment for EAJA purposes after the proceedings on remand have been completed. On the other hand, if the remand order *directs* the Secretary to award benefits, the claimant is a prevailing party and the remand order is the final judgment for EAJA purposes.

*Labrie*, 976 F.2d at 786 (emphasis added) (quoting *Hafner v. Sullivan*, 972 F.2d 249, 250–51 (8th Cir.1992)); *see also Gray v. Secretary of Health & Human Servs.*, 983 F.2d 954, 960 (9th Cir.1993); *Gutierrez v. Sullivan*, 953 F.2d 579, 584 (10th Cir.1992). Most importantly, if the district court order was an open-ended remand, pre-*Melkonyan* practice (as defined in *Labrie*) would give rise to the presumption "that the court does intend to retain jurisdiction in such cases *absent an express indication to the contrary.*" *Labrie*, 976 F.2d at 786 (emphasis added).[3]

Under the *Labrie* rubric, there can be no question that the November 6, 1990 judgment " 'contemplate[d] additional administrative proceedings [to] determine the mer-

its of the claimant's application for benefits, and thus [to] determine whether the claimant is a prevailing party....' " *Id.* (citation omitted). The November 6, 1990 judgment did not "direct" USDOL or MDOL to award Tyler benefits, but *conditionally* directed defendants to award benefits in an as-yet undetermined amount *only if* Tyler were found entitled to benefits under the "last separation" formula *and after consideration of other applicable state law*. The "first separation" rule was not the final obstacle to Tyler's claim for TRA benefits. As the district court recognized, Tyler filed no administrative appeal from MDOL's denial of basic TRA benefits in 1985, and, on remand, either USDOL or MDOL would be in a position to assert their res judicata and administrative finality defenses to bar Tyler's claim. *Tyler*, 752 F.Supp. at 39 (citing *International Union, U.A.W. v. Brock*, 816 F.2d 761, 768–69 (D.C.Cir.1987) (noting that claimant's entitlement to reconsideration by State of her TRA benefit determination always remains subject to "procedural requirements of state law")). Thus, it was by no means a foregone conclusion that Tyler would ever receive TRA benefits, or attain the status of a "prevailing party" under the EAJA. Finally, the November 6, 1990 judgment contains no express disclaimer of jurisdiction which might conclusively rebut the *Labrie* presumption.

The district court apparently denied Tyler's EAJA fee application solely on the ground that *Melkonyan* had interposed an insurmountable jurisdictional bar, *see Howitt v. United States Dept. of Commerce*, 897 F.2d 583, 584 (1st Cir.), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990), preempting any exercise of the district court's discretion to enter a "final" EAJA judgment pursuant to Tyler's postre-

---

**3.** Of course, the *Labrie* presumption would apply with even greater force outside the Social Security context. When acting outside the strictures of the Social Security statute, a reviewing court normally is not confined to *two* types of remand, but possesses the "inherent" authority to condition its remand order as it deems appropriate. *See Melkonyan*, ⸺ U.S. at ⸺, 111 S.Ct. at 2165 (citing *United States v. Jones*, 336

U.S. 641, 671, 69 S.Ct. 787, 802, 93 L.Ed. 938 (1949)). Absent a *Labrie*-type presumption, the litigants would have no reliable criteria for determining the district court's intentions where an *ad hoc* remand order was either silent or equivocal as to the status of the claimant's EAJA application, or the claimant's status as a "prevailing party."

mand settlement. Given the widespread confusion prevailing among the courts at the time, *see Labrie*, 976 F.2d at 783–86, the district court's interpretation in this case was by no means without authoritative support. Nevertheless, in light of the *Labrie* presumption, buttressed by the district court's summary allowance of Tyler's motion for an extension of the filing deadline to "thirty days after final resolution of the plaintiffs' claims for Trade Act benefits from the [MDOL]," we find no jurisdictional bar to Tyler's EAJA fee application.

**The order of dismissal is vacated and the case is remanded for proceedings on the merits of the EAJA fee application.**